# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| OMORFIA VENTURES, INC., ) | |
| ) | |
|    Plaintiff ) | |
| ) | Case No. 3:19-cv-0794 |
| v. ) | District Judge Richardson |
| ) | Magistrate Judge Newbern |
| POSH BRIDAL COUTURE, LLC, MARIE ) | |
| SUCHY, and DEAN SUCHY, ) | |
| ) | |
|    Defendants. ) | |
| ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Comes the Plaintiff, Omorfia Ventures, Inc. ("Omorfia"), by and through counsel, and submits the following response in opposition to the Motion to Dismiss (Doc. No. 11) filed by the Defendants, Posh Bridal Couture, LLC ("Posh"), Marie Suchy and Dean Suchy (collectively, the "Defendants").

## I.  INTRODUCTION

This case concerns the purchase and sale of a business by and between Plaintiff Omorfia Ventures, Inc. ("Omorfia") and the Defendant, Posh Bridal Couture, LLC ("Posh"). Prior to March 6, 2019, Posh owned and operated a bridal dress retail business at two locations: (1) Posh Bridal Couture in Nashville, Tennessee ("Posh Bridal Tennessee"); and (2) Posh Bridal Couture in Wayzata, Minnesota ("Posh Bridal Minnesota"). Defendants, Marie Suchy and Dean Suchy operated and managed the Posh Bridal Tennessee and Posh Bridal Minnesota businesses.

On or around December 14, 2018, Omorfia began discussions with Defendants concerning the potential purchase of the Posh Bridal Tennessee business. Thereafter, Defendants made numerous representations to Omorfia regarding the value, financial condition and viability of Posh

Bridal Tennessee. Defendants provided Omorfia with due diligence documentation, including detailed financial disclosure documents and profit and loss statements concerning the Posh Bridal Tennessee business. Omorfia relied upon Defendants' representations and documents in deciding to purchase the business. On March 6, 2019, Omorfia and Posh entered into an Asset Purchase Agreement (the "APA") under which Posh sold substantially all of Posh Bridal Tennessee's assets to Omorfia.

After closing on the sale contemplated by the APA, Omorfia learned that certain business information and financial records provided by Defendants were not accurate and contained misrepresentations. Defendants induced Omorfia to purchase the assets of Posh Bridal Tennessee at a grossly inflated price by making false statements to Defendants via oral discussions, written communications and through the financial records and other due diligence materials provided to Omorfia. Further, Posh breached the APA by failing to deliver the assets to Omorfia as represented and by the breaching numerous other obligations and warranties under the APA. Omorfia suffered significant economic damages as a result of Defendants inducing Omorfia to pay the purchase price under the APA and by wrongfully breaching the APA.

On September 11, 2019, Omorfia filed its Complaint against the Defendants ("Compl.") (Doc. No. 1). In its Complaint, Omorfia asserts that Defendants' conduct constituted breach of contract, fraudulent inducement to contract, intentional misrepresentation and negligent misrepresentation.

Rather than answering the allegations of the Complaint, Defendants' Motion to Dismiss attempts to avoid liability for their intentional and negligent misconduct and breach of contract based upon an erroneous interpretation of applicable law. Defendants' motion is without merit and should be denied in its entirety.

## II. ARGUMENT

### A. Standard of Review.

Defendants' motion relies on Federal Rule of Civil Procedure 12(b)(6), which governs motions to dismiss for failure to state a claim. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff need only "state a claim to relief that is plausible on its face[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint need only give the defendant "fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, a motion to dismiss under Rule 12(b)(6) should be granted only "if it is clear that no relief could be granted or any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 79, 73 (1984) (citing Conley, 355 U.S. at 45-46.)).

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must take all allegations of the Complaint as true and construe the Complaint liberally in favor of the party opposing the motion to dismiss, in this case, Omorfia. *Westlake v. Lucas*, 547 F.2d 857, 858 (6th Cir. 1976). While conclusory statements are not entitled to an assumption of truth, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 699 (2009). Taking Omorfia's allegations as true, as this Court must do, the Complaint more than adequately pleads causes of action entitling Omorfia to relief for Defendants' breach of contract, fraudulent inducement to contract, intentional misrepresentation and negligent misrepresentation. Accordingly, this Court should deny Defendants' Motion to Dismiss in its entirety.

### B. Omorfia's Tort-Based Intentional and Negligent Misrepresentation Claims Are Actionable and Should Not be Dismissed.

Omorfia has properly pled tort-based causes of action against Defendants for fraudulent inducement to contract, fraud/intentional misrepresentation[1] and negligent misrepresentation. (Compl., Counts II-IV, ¶¶73-98). Defendants' Motion to Dismiss does not challenge the sufficiency of Omorfia's allegations. Instead, Defendants assert the legal argument that liability in intentional and negligent misrepresentation tort claims only arises where the party being charged with the misrepresentation had a legal duty to disclose the facts at issue. *See*, Memorandum of Law in Support of Motion to Dismiss by Defendants ("Def.'s Mem. in Supp.") (Doc. No. 12), at pp. 5-6. Further, Defendants contend that a duty to disclose only arises in three distinct circumstances, which Defendants assert are not applicable in this case. *Id*. However, Defendants' broad contentions with respect to the law regarding intentional and negligent misrepresentation claims is not accurate. Pursuant to Defendants' argument, misrepresentation claims cannot arise in any commercial transaction unless the party being held responsible had a legal duty to disclose the facts at issue. This is simply not the law under Sixth Circuit or Tennessee precedent.

### 1. There is no rule under Tennessee law that requires a plaintiff to establish a legal duty to disclose in order to sufficiently allege misrepresentation claims.

Defendants conflate the elements of a fraudulent concealment cause of action (which has not been asserted by Omorfia) with the elements of causes of action for fraudulent inducement to contract, intentional misrepresentation and negligent misrepresentation (which have been pled in

---

[1] Omorfia has asserted a cause of action labeled "Fraud and Intentional Misrepresentation." (Compl. Count III, ¶¶ 82-90). This cause of action will be referred to herein as "Intentional Misrepresentation." *See*, *Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012) (noting that "'intentional misrepresentation,' 'fraudulent misrepresentation,' and 'fraud' are different names for the same cause of action").

this case). The Defendants cherry pick portions of the Tennessee Court of Appeals opinion *in PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525 (Tenn. Ct. App. 2012), discussing the elements of fraudulent concealment, and attempt to apply those factors to Omorfia's tort claims. *See*, Def.'s Mem. in Supp., at p. 5. In *PNC*, the court analyzed plaintiff's claims for numerous torts on a motion to dismiss, including claims for misrepresentation, fraudulent concealment, aiding and abetting a breach of fiduciary duty, conversion and civil conspiracy. *PNC*, 387 S.W.3d at 547. However, the court's discussion of a duty to disclose was specifically limited to only consideration of the plaintiff's claim for fraudulent concealment. *Id*. at 550-51.

Likewise, Defendants cite portions of the opinion of the Court of Appeals for the Sixth Circuit in *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557 (6th Cir. 2003) regarding fraudulent concealment and attempt to apply those standards to all of Omorfia's tort claims. *See*, Def.'s Mem. in Supp., at p. 5. In *Shah*, the Sixth Circuit, on an appeal of the defendant's motion for summary judgment, analyzed numerous claims asserted by plaintiff, including promissory fraud, violations of the Tennessee Consumer Protection Act, fraudulent concealment, and breach of the covenant of good faith and fair dealing. *Shah*, 338 F.3d at 561. Again, the court's discussion of a duty to disclose was specifically limited to only the plaintiff's claim for fraudulent concealment. *Id*. at 571. The Sixth Circuit held that the plaintiff raised genuine issues of material fact with respect to the promissory fraud claim under Tennessee law, and at the same time, held that the district court property granted summary judgment as to plaintiff's fraudulent concealment claim. *Id*. at 568, 572. The Sixth Circuit's holding illustrates that a blanket requirement of a duty to disclose is not applicable to all misrepresentations claims in a commercial transaction; it is only applicable to claims of fraudulent concealment.

In this case, Defendants incorrectly apply the factors necessary for a fraudulent concealment claim, as discussed in *PNC* and *Shah*, to all of Omorfia's tort-based intentional and negligent misrepresentation claims. Contrary to Defendants' position, there is no rule under Tennessee law that requires a plaintiff to establish a legal duty to disclose in order to properly allege misrepresentation claims. The existence of a duty to disclose is not determinative as to whether intentional and negligent misrepresentation tort claims are actionable.

Here, plaintiff has asserted three tort-based claims, none which require plaintiff to allege or otherwise demonstrate that Defendants' had a legal duty to disclose the facts at issue.

In order to properly plead a claim for fraudulent inducement to contract, a plaintiff must allege that: 1) a false statement concerning a fact material to the transaction; 2) knowledge of the statement's falsity or utter disregard for its truth; 3) intent to induce reliance on the statement; 4) reliance under circumstances manifesting a reasonable right to rely on the statement; 5) an injury resulting from the reliance. *Lamb v. Megaflight, Inc.*, 26 S.W.3d 627, 630 (Tenn. Ct. App. 2000). In order to properly plead a claim of intentional misrepresentation, a plaintiff must allege that: (1) the defendant made a representation of an existing or past fact; (2) the representation was false when it was made; (3) the representation involved a material fact; (4) the defendant made the representation recklessly, with knowledge that it was false, or without belief that the representation was true; (5) the plaintiff reasonably relied, on the representation; and (6) the plaintiff was damaged by relying on the representation." *Davis v. McGuigan*, 325 S.W.3d 149, 154 (Tenn. 2010). Lastly, in order to properly plead a claim of negligent misrepresentation, a plaintiff must allege that 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff

reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008).

Conspicuously absent from the foregoing elements of these causes of action is any requirement that a plaintiff plead or demonstrate a defendant's legal duty to disclose the facts at issue. Here, Omorfia does not allege that Defendants failed to disclose information. Rather, Omorfia alleges that Defendants made material misrepresentations of fact in the information provided to Omorfia. In its Complaint, Omorfia alleges that the following due diligence materials were provided to Omorifa prior to closing on the transaction:

- detailed financial disclosure documents and profit and loss statements for Posh Bridal Tennessee (Compl. ¶18);
- detailed responses to a questionnaire designed to provide Plaintiff with numerous material representations concerning the value, financial condition and viability of Posh Bridal Tennessee (*Id*. at ¶19); and,
- representations to Plaintiff regarding the value, financial condition and viability of Posh Bridal Tennessee in discussions and negotiations between the parties (*Id*. at ¶20).

Further, Omorfia alleges that after closing on the transaction, it learned certain business information and the financial records provided by Defendants were not accurate. (*Id*. at ¶38). The information contained in the due diligence materials provided by Defendants was inflated and manipulated to misrepresent the actual financial condition of the business. (*Id*. at ¶39-41). Omorfia specifically alleges, among other things, that the following misrepresentations were contained in the information disclosed:

- Defendants failed to deduct sales taxes in the financial and profit and loss statements, and as a result, artificially inflated the business' gross profits (*Id*. at ¶¶42-43);

- Defendants knowingly omitted certain business expenses from the financial statements (*Id*. at ¶44);

- Defendants failed to include marketing expenses in the financial statements (*Id*. at ¶45);

- Defendants failed to include all of the business's payroll expenses in the financial statements (*Id*. at ¶46);

- Defendants failed to divulge past due rent payments and other past due accounts in the financial statements (*Id*. at ¶¶47-49);

- Defendants misrepresented the business's sales closing ratio (*Id*. at ¶¶50-52); and,

- Defendants failed to include loan and interest expenses in the financial statements (*Id*. at ¶66).

By failing to include the full extent of the business's expenses, such as sales taxes, marketing expenses, payroll expenses, past due accounts and interest expenses, Defendants manipulated the true financial condition of the business. (*Id*. at ¶39-41). The cumulative effect of these misrepresentations is that financial condition of the business was artificially inflated as disclosed in the information and documents provided by Defendants. This was not a concealment of financial information, but rather, an affirmative fraudulent manipulation of the information and data provided during due diligence.

Omorfia has made well-pled allegations of misrepresentations contained in the financial statements and other information provided to Omorfia. Defendants, through these

misrepresentations, inflated and manipulated the books and records of Posh Bridal Tennessee to falsify the actual financial condition of the business. (Compl. at ¶84). As a result, information that Omorfia affirmatively relied upon in entering into the APA and closing on the asset purchase, was manipulated to misrepresent the actual financial condition of the business. (*Id*. at ¶¶ 39). Clearly, these are misrepresentations of fact contained in the information provided to Omorfia; not allegations of fraudulent concealment or a failure to disclose information. Defendants, therefore, are not entitled to blanket immunity from Omorfia's well-pled intentional and negligent misrepresentation claims. The Defendants' Motion to Dismiss should be denied as to Omorfia's intentional and negligent misrepresentation tort claims

### 2. Alternatively, Defendants had a duty to disclose all material facts related to Omorfia's tort-based misrepresentation claims.

While Omorfia maintains that Defendants made affirmative misrepresentations and this is not a case of fraudulent concealment, alternatively, and to the extent the Court determines that this is a case of misrepresentation by concealment, Omorfia asserts that Defendants were operating under a duty to disclose to Omorfia the facts at issue.

In their Motion, Defendants contend that this case does not fall within the categories set forth in the nineteenth century case, *Domestic Sewing Mach. v. Jackson*, 83 Tenn. 418 (Tenn. 1885), and therefore, Defendants had no duty to disclose the facts material to financial statements and records provided to Omorfia. (Def.'s Mem. in Supp., p. 6). However, in a more recent line of cases discussing fraudulent concealment, the Tennessee Supreme Court has held that "each party to a contract is bound to disclose to the other all he may know respecting the subject matter materially affecting a correct view of it, unless common observation would have furnished the information." *Simmons v. Evans*, 206 S.W.2d 295, 296 (Tenn. 1947) (*quoting Perkins v. McGavock*, 3 Tenn. 415, 417 (Tenn. 1813)). In a case involving the sale of real property, the

9

Tennessee Supreme Court, relying on *Simmons*, held that "a party may be found liable for damages caused by his or her failure to disclose material facts to the same extent that the party may be held liable for damages caused by fraudulent or negligent misrepresentations." *Fayne v. Vincent*, 301 S.W.3d 162, 177 (Tenn. 2009).

Defendants contend that the line of cases discussing a duty to disclose originating from *Simmons* applies exclusively to consumer transactions. (Def.'s Mem. in Supp., p. 6). To the contrary, the Middle District of Tennessee has applied the *Simmons* line of cases to matters outside of consumer transactions. *See*, *Bridgestone Am.'s, Inc. v. IBM*, 172 F. Supp. 3d 1007, 1018 (M.D. Tenn. 2016) (applying the *Simmons* to a sophisticated commercial transaction and determining that plaintiff's allegations of fraud in the inducement and misrepresentation were plausible and sufficiently pled). In *Bridgestone*, the Middle District recognized that Tennessee courts have applied *Simmons* to commercial transactions:

> since *Shah* was decided in 2003, Tennessee courts have repeatedly applied *Simmons* in contexts other than car and real estate sales. *See Guesthouse*, 330 S.W.3d 166, 2010 Tenn. App. LEXIS 206, at *82-87; *Consumer Fin. Servs. (Mgmt.) v. Consumer Fin. Servs. Mgmt.*, L.L.C., No. M2003-02030-COA-R3-CV, 2005 Tenn. App. LEXIS 774 (Tenn. Ct. App. Dec. 9, 2005) (applying *Simmons* to a transaction involving the sale of a business); *see also Body Invest, LLC v. Cone Solvents, Inc.*, No. M2006-01723-COA-R3-CV, 2007 Tenn. App. LEXIS 480, at *16, 24 (Tenn. Ct. App. July 26, 2007) (allowing a fraudulent concealment claim to go forward when the parties were not in a fiduciary relationship; the defendant sold contaminated chemicals to the plaintiff, a tanning products manufacturer).

*Bridgestone*, 172 F. Supp. 3d at 1017 n.6; *see also*, *Bearden v. Honeywell Int'l, Inc.*, 720 F. Supp. 932, 940-41 (M.D. Tenn. 2010) (discussing the development of the law in Tennessee since *Shah* was decided).

The Tennessee Court of Appeals decision in *Consumer Fin. Servs.*, cited by *Bridgestone*, is particularly instructive as a fraudulent inducement of a contract case that involved misrepresentations and concealment on the part of a seller of business assets and equity interests in a business. In *Consumer Fin. Servs*, sellers sold a loan company business to purchasers pursuant to an asset purchase agreement and stock purchase agreement. *Consumer Fin. Servs.*, 2005 Tenn. App. LEXIS at *6. After closing the transaction, purchasers discovered numerous financial and operational problems and that the condition of the business was "not as it had appeared during negotiations." *Id*. at *8. Litigation ensued between the parties and the purchasers asserted, among other things, that sellers were liable for "(1) falsely representing that the financial statements provided to the Defendants accurately reflected the financial position of the business, (2) providing inaccurate inventories, (3) falsely representing that the corporations were in good standing with customers and suppliers of the business, and (4) falsely representing that there were no defaults under any agreements." *Id*. at *10. In response, the sellers relied upon *Domestic Sewing* for the proposition that they had no duty to disclose certain financial and tax information to the purchasers in an arm's-length commercial transaction. *Id*. at *26. However, the Tennessee Court of Appeals rejected the sellers' argument, finding that under *Simmons*, the sellers had a duty to disclose tax and financial information concerning the business to purchasers. *Id*. at *26-27.

Like the sellers in *Consumer Fin. Servs*, the Defendants in this case cannot attempt to claim an absolute right to conceal from Omorfia material information from their financial statements and records. The *Simmons* line of cases applies to this case. Defendants operated Posh Bridal Tennessee and were intimately knowledgeable about the company's finances, including its taxes, expenses, debts and the operations of the business. Omorfia has alleged that Defendants had superior knowledge of all financial matters related to the business and were in exclusive control

of information related to the assets, liabilities and inventory depicted in the financial disclosures and profit and loss statements prepared by Mr. and Mrs. Suchy. (Compl. ¶19). The information provided by Defendants directly impacted Omorfia's decision to purchase the business and dictated the ultimate purchase price. (*Id*. at ¶24). Because of Defendants' intimate knowledge about the business and the fact that they made numerous representations about the financial condition business to Omorfia (as specifically alleged in the Complaint) in order to close the asset sale, Defendants had a legal duty to disclose all material facts at issue. Defendants had a duty to disclose, and Omorfia's tort-based misrepresentation claims have been sufficiently pled.

      C.      **<u>Omorfia's Claims for Fraudulent Inducement Are Properly Pled and Should Not be Dismissed.</u>**

As set forth above, the elements of an action for fraudulent inducement[2] to contract are: 1) a false statement concerning a fact material to the transaction; 2) knowledge of the statement's falsity or utter disregard for its truth; 3) intent to induce reliance on the statement; 4) reliance under circumstances manifesting a reasonable right to rely on the statement; 5) an injury resulting from the reliance. *Lamb v. Megaflight, Inc.*, 26 S.W.3d 627, 630 (Tenn. Ct. App. 2000). In its Complaint, Omorfia has properly pled a fraudulent inducement to contract claim.

Defendants' reliance upon *Kelly v. Int'l Capital Res., Inc.*, 231 F.R.D. 502 (M.D. Tenn. 2005) is unpersuasive. In *Kelly*, the plaintiff's claims were based on promissory fraud "because the plaintiff alleges that defendants induced him to enter into the agreement by making promises

---

[2] "A claim for fraudulent inducement is closely associated with an intentional misrepresentation claim, as "[i]t arises when a person's willingness to enter into a contract is caused by another person's [intentional] misrepresentations with regard to a matter material to the contract." *Fulmer v. Follis*, 2018 Tenn. App. LEXIS 749, at *11-12 (Tenn. Ct. App., Dec. 20, 2018)(quoting *Lowe v. Gulf Coast Dev., Inc.*, 1991 Tenn. App. LEXIS 860 (Tenn. Ct. App., Nov. 1, 1991).

to engage in future conduct." *Kelly*, 231 F.R.D. at 518. However, *Kelly* is inapplicable to this case for the simple reason that Omorfia's fraudulent inducement claim is not premised on promises on future conduct. Indeed, in *Kelly*, the Middle District of Tennessee recognized that "'claims for fraudulent inducement to enter into a contract may involve false statements of past *or* present facts or false promises made without the present intent to perform.'" *Id*. at 517 (*quoting Lowe v. Gulf Coast Dev., Inc.*, 1991 Tenn. App. LEXIS 860 (Tenn. Ct. App. Nov. 1, 1991) (emphasis added)).

Here, Defendants' misrepresentations did not relate to their future conduct or intentions regarding performance under the APA. Defendants' misrepresentations related to present and past facts contained the various financial documents and disclosures provided to Omorfia during due diligence. These were misrepresentations of facts intended to induce Omorfia to enter into the APA and pay the purchase price, not promises of future conduct, and any rule concerning promissory fraud is therefore irrelevant.

Defendants argue that Omorfia's fraudulent inducement claim fails because Omorfia has failed to allege that Defendants had no present intent to perform on the transaction at issue. (Def.'s Mem. in Supp., p. 7). However, Omorfia's fraudulent inducement claim does not rest on false promises made without the present intent to perform (i.e., promissory fraud). Rather, Omorfia's inducement claim rests on Defendants' multiple false statements concerning the value and financial condition of the Posh Bridal Tennessee business, which induced Omorfia to enter into the asset purchase transaction and pay the purchase price. Under Tennessee law, "claims for fraudulent inducement to enter into a contract may involve false statements of past or present facts *or* false promises made without the present intent to perform." *Lowe*, 1991 Tenn. App. LEXIS 860, at *21 (emphasis added); *see also*, *Carter v. Patrick*, 163 S.W.3d 69, 77 (Tenn. Ct. App. 2004) (noting "*if* the claim is based on promissory fraud, then the misrepresentation must embody

13
Case 3:19-cv-00794   Document 15   Filed 11/12/19   Page 13 of 19 PageID #: 125

a promise of future action without the present intention to carry out the promise") (emphasis added). Omorfia's allegations more than adequately satisfy the factors for a fraudulent inducement claim under Tennessee law.

### D. Omorfia's Claim for Negligent Misrepresentation Against Mr. Suchy Is Properly Pled and Should Not be Dismissed.

Omorfia has properly pled a negligent misrepresentation claim against Mr. Suchy. In their Motion, Defendants move to dismiss Omorfia's negligent misrepresentation claim only against Mr. Suchy, contending that the claim fails because Omorfia has not alleged that Mr. Suchy had a pecuniary interest in Posh or the transaction at issue. (Def.'s Mem. in Supp., p. 8). However, Defendants' Motion fails to recognize that liability for negligent misrepresentation arises when the te defendant is acting in the course of his business or employment, *or* in a transaction in which he has a pecuniary interest.

"'In commercial transactions the law has recognized a less stringent standard of liability for fraudulent misrepresentation than the common law action for deceit.'" *Keller v. W.-Morr Inv'rs*, *Ltd.*, 770 S.W.2d 543, 546 (Tenn. Ct. App. 1988) (*quoting Haynes v. Cumberland Builders, Inc.*, 546 SW2d 228 (Tenn. Ct. App. 1976)). There need not be contractual privity between the plaintiff and defendant to properly plead the tort of negligent misrepresentation as long as the following criteria are met: 1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; 2) the defendant supplies faulty information meant to guide others in their business transactions; 3) the defendant fails to exercise reasonable care in obtaining or communicating the information and 4) the plaintiff justifiably relies upon the information. *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997) (*citing* Restatement (Second) of Torts, § 552)).

14

In *Caboodles Cosmetics, Ltd. P'ship v. Caboodles, LLC*, 412 F. Supp. 2d 872 (W.D. Tenn. 2006), the Western District of Tennessee considered a case in which the purchaser of business under an asset purchase agreement asserted numerous claims against the seller after purchaser discovered discrepancies in seller's financial records following the closing. *Coboodles*, 412 F. Supp. 2d at 874-75. The purchaser also asserted claims against the manager of seller in his personal capacity. *Id*. The manager filed a motion to dismiss, among other things, the purchaser's allegations of fraudulent misrepresentation asserted against him. *Id*. at 877. The district court denied the manager's motion to dismiss, finding that he acted in the course of his employment as manager for seller and could not escape individual liability for the negligent misrepresentations made to purchaser. *Id*. at 879-80.

Here, Mr. Suchy was acting in the course of his business or employment on behalf of Posh. It is immaterial that Mr. Suchy may not have had an ownership interest in Posh. It is immaterial that Mr. Suchy is not listed on documents filed with the Minnesota Secretary of State. With respect to the first element of a negligent misrepresentation claim, a plaintiff must only allege that "the defendant is acting in the course of his business, profession, or employment, *or* in a transaction in which he has a pecuniary (as opposed to gratuitous) interest." *Robinson*, 952 S.W.2d at 427. Omorfia has sufficiently pled this element. In its Complaint, Omorfia alleges that Mr. Suchy operated and managed Posh (Compl. ¶11), assisted with the financial affairs of the business (*Id*. at ¶12), and prepared the business's financial records that are at issue in this case. (*Id*. at ¶14). These allegations are more than sufficient to satisfy the first element of a negligent misrepresentation claim. Accordingly, Defendants' Motion to Dismiss on this ground should be denied.

### E. Omorfia Is Entitled to Recover All Damages for Posh's Breach of Contract, and Its Damages Should Not Be Capped or Excluded.

Omorfia has alleged claims for tort damages against Defendants (i.e., fraudulent inducement, intentional misrepresentation and negligent misrepresentation) as well as claims for contractual damages against Defendant Posh for breach of the APA. It is obvious that the contractual indemnification damages cap does not apply to Omorfia's tort-based claims. In their Motion, Defendants request that the Court dismiss all of Omorfia's claims for breach of contract damages that exceed the damages cap for indemnification of losses[3] as set forth in Section 8(f) of the APA. However, the indemnification damages cap is not applicable to Omorfia's claims.

As an initial matter, "a contractual duty to indemnify generally arises only with regard to claims brought by third parties against the putative indemnitee." *Bowen v. Paisley*, 2014 U.S. Dist. LEXIS 81462, at *6 (M.D. Tenn. June 16, 2014). Tennessee courts have been reluctant to enforce standard indemnity provisions to claims between the contracting parties, as opposed to claims involving third parties. *See*, *Colonial Pipeline Co. v. Nashville & E. R.R. Corp.*, 253 S.W.3d 616, 624 (Tenn. Ct. App. 2007); *Eatherly Constr. Co. v. HTI Mem'l Hosp.*, Tenn. App. LEXIS 575, at *32 (Tenn. Ct. App. Sept. 12, 2005) (no perm. app. filed) (application of the indemnity provision to a contract dispute between the contracting parties would yield an absurd result); *Nat'l Healthcare Corp. v. Barker*, 2016 U.S. Dist. LEXIS 76546, at *40 (M.D. Tenn. June 13, 2016) (finding that the attorney fee clause in indemnification provision does not authorize fee-shifting in the event of a direct breach of contract action between the parties to the contract).

---

[3] The indemnification damages cap in favor of Posh is approximately only 10% of the purchase price paid by Omorfia under the APA. *See*, APA §§ 3(a), 8(f)).

The unilateral damages cap in favor of Posh set forth in Section 8(f) of the APA applies only to "losses" for indemnification as defined by Section 8 of the APA. Nothing in the indemnification provision of the APA provides that indemnification is the sole or exclusive remedy for breach of the APA. It is clear that Section 8(f) does not apply to all claims for breach of the APA. The indemnification damages cap is specifically limited to "Losses pursuant to claims for breaches of representations and warranties." (APA §8(f)). Indeed, if the parties had intended the indemnification damages cap to apply as the exclusive remedy for all breaches of the APA, the parties would have stated such in the APA.

In its Complaint, Omorfia has alleged that Posh breached not only its warranties under the APA, but also, Posh breached the core of the transaction itself. For example, Omorfia alleges that Posh failed to deliver the assets at closing free and clear of encumbrances. (Compl. ¶¶57-65). Section 1 of the APA provides that "Seller [Posh] agrees to sell to Purchaser [Omorfia], free and clear of all liabilities and encumbrances, . . ." (APA §1). In the Complaint, Omorfia alleges that the assets of Posh were encumbered by liens at the time of closing. (Compl. ¶62). Further, Posh refused to release the liens until over four (4) months after closing. (*Id*. at ¶64). Because of Posh's failure and refusal to release the liens, Omorfia was damaged because it was unable to obtain financing necessary to grow and market its newly acquired business. (*Id*. at ¶65). Posh's breach of the APA, by failing to deliver the assets free and clear of encumbrances, is a fundamental covenant of the transaction that goes to performance separate and apart from the seller's warranties under the APA (set forth in Section 5 of the APA) that may be subject to indemnification. Accordingly, the damages for Omorfia's claim of breach of contract in this instance are not subject to the APA's indemnification cap.

Further, the indemnification damages cap, to the extent it is applicable at all, should not be enforced as to Omorfia's breach of contract claims because the APA was procured by fraud. Courts in Tennessee have recognized that "fraud in the underlying transaction renders a contract clause . . . unenforceable. *Lamb*, 26 S.W.3d at 631; *see also*, *Shelby Elec. Co. v. Forbes*, 205 S.W.3d 448, 455 (Tenn. Ct. App. 2005) ("It is well settled in Tennessee that the courts of our State will not be utilized to enforce a contract which is the product of fraud; indeed, fraud vitiates all that it touches."). A party cannot contract away liability for fraud. Because Omorfia was fraudulently induced into entering the APA with Posh, Omorfia should not be bound by any damages cap within the APA.

### III. CONCLUSION

Construing the allegations of the Complaint in the light most favorable to Omorfia, as this Court must do, Omorfia's claims for breach of contract, fraudulent inducement to contract, intentional misrepresentation and negligent misrepresentation are plausible and sufficiently pled. For all of the foregoing reasons, Omorfia respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety.

Respectfully submitted,

/s/ J. Cole Dowsley, Jr.
J. Cole Dowsley, Jr. (TN BPR #024400)
THOMPSON BURTON PLLC
1801 West End Avenue, Suite 1550
Nashville, Tennessee 37203
615-465-6003
cole@thompsonburton.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was electronically filed on November 12, 2019, via the court's ECF system, and a true and exact copy of the foregoing was served on November 12, 2019 via the Court's CM/ECF System to:

Sean C. Kirk
BONE MCALLESTER NORTON PLLC
511 Union Street, Suite 1600
Nashville, Tennessee 37219
skirk@bonelaw.com

                                          /s/ J. Cole Dowsley, Jr.
                                          J. Cole Dowsley, Jr.