UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| OMORFIA VENTURES, INC., | ) |
| Plaintiffs, | ) |
| v. | ) NO. 3:19-cv-00794 |
| POSH BRIDAL COUTURE, LLC, | ) JUDGE RICHARDSON |
| MARIE SUCHY, and DEAN SUCHY, | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Pending before the Court is Defendants Posh Bridal Couture, LLC, Marie Suchy, and Dean Suchy's Motion to Dismiss (Doc. No. 11, "Motion"). Plaintiff Omorfia Ventures, Inc. responded, (Doc. No. 15), and Defendants replied. (Doc. No. 19). For the following reasons, Defendants' Motion will be denied.

## PLAINTIFF'S FACTUAL ALLEGATIONS AND CLAIMS[1]

Plaintiff Omorfia Ventures, Inc. is a corporation organized under Tennessee law. (Doc. No. 1 at ¶ 1). Defendant Posh Bridal Couture, LLC ("Posh Bridal") is a Minnesota limited liability company. (*Id.* at ¶¶ 2, 9). Prior to March 6, 2019, Posh Bridal owned a bridal store located in Nashville, Tennessee ("Posh Bridal Tennessee") and a bridal store located in Wayzata, Minnesota ("Posh Bridal Minnesota"). (*Id.* at ¶ 10).

Defendants Marie Suchy and Dean Suchy are husband and wife. (*Id.* at ¶ 8). Defendant Marie Suchy owns, operates, and manages Posh Bridal. (*Id.* at ¶ 9). Defendants Marie Suchy and

---

[1] The following facts are alleged in the Complaint and accepted as true for purposes of the Motion to Dismiss.

Dean Suchy operated, managed, and assisted with the financial affairs of both Posh Bridal stores. (*Id*. at ¶¶ 11-12).

Defendant Dean Suchy has worked in the banking industry as a commercial loan officer. (*Id*. at ¶ 13). Upon information and belief, Dean Suchy prepared Posh Bridal's financial records relevant to this action and engaged the services of a business broker to find a buyer for Posh Bridal Tennessee. (*Id*. at ¶¶ 14-15). It is through this business broker that Plaintiff became aware of Defendants' intent to sell the Posh Bridal Tennessee business. (*Id*.).

On or around December 14, 2018, Plaintiff began discussions with Defendants to purchase Posh Bridal Tennessee. (*Id.* at ¶ 17). Prior to the sale of Posh Bridal Tennessee, Defendants Dean and Marie Suchy prepared detailed financial disclosure documents and profit and loss statements for Posh Bridal Tennessee, which were provided to Plaintiff. (*Id.* at ¶ 18). Additionally, during negotiations, Defendant Marie Suchy prepared detailed responses to a questionnaire designed to provide Plaintiff with numerous material representations concerning the value, financial condition and viability of Posh Bridal Tennessee. (*Id.* at ¶ 20). In numerous discussions and negotiations between the parties, Defendants made additional representations to Plaintiff regarding the value, financial condition and viability of Posh Bridal Tennessee. (*Id*. at ¶ 21). Defendants had superior knowledge of all financial matters related to the business and were in exclusive control of information related to the assets, liabilities and inventory depicted in the financial disclosures and profit and loss statements prepared by Dean and Marie Suchy. (*Id.* at ¶ 19). Plaintiff relied on the representations made in the documents provided by Defendants and during discussions between the parties, which impacted Plaintiff's decision to purchase Posh Bridal Tennessee and dictated the ultimate purchase price. (*Id*. at ¶¶ 22-24).

Plaintiff and Defendant Posh Bridal entered into an Asset Purchase Agreement ("APA"), wherein Defendant Posh Bridal, as Seller, agreed to sell, "free from all liabilities and encumbrances," substantially all of the assets of Posh Bridal Tennessee to Plaintiff, as Purchaser. (*Id.* at ¶¶ 25-27).

Under the APA, Defendant Posh Bridal represented and warranted that the "financial information supplied to Purchaser by seller [was] true and correct as of the dates of such information in all material aspects." (*Id.* at ¶ 33). Furthermore, the APA states that Defendant Posh Bridal represented and warranted that the supplied financial information was "a fair and accurate representation of the financial condition" of Posh Bridal Tennessee and that no document provided by Defendants contained "any untrue statement of a material fact or omit[ted] to state a material fact required to be stated in order to make such a statement not misleading." (*Id.* at ¶¶ 33-34). On March 6, 2019, the parties closed on the sale contemplated by the APA. (*Id.* at ¶ 38).

After executing the APA and closing on the sale of Posh Bridal Tennessee, Plaintiff learned that certain business information and financial records provided by Defendants were inaccurate, inflated and/or manipulated to misrepresent the actual financial condition of Posh Bridal Tennessee. (*Id.* at ¶¶ 38-39). That is, Defendants had made material misrepresentations in the financials and documents provided to induce Plaintiff to purchase Posh Bridal Tennessee, and to fraudulently inflate the value of and increase the purchase price of Posh Bridal Tennessee. (*Id.* at ¶¶ 40-41). For example, Defendants had failed to include and deduct sales taxes in the financial documents, and profit and loss statements, thereby fraudulently inflating Defendants' gross profits. Defendants also failed to disclose marketing expenses, payroll expenses, certain liabilities, past due accounts in excess of $25,000, and the fact that Posh Bridal Tennessee was two months past due on rent. (*Id.* at ¶¶ 44-49). Defendants also had fraudulently misrepresented to Plaintiff that the

closing ratio was twice the close rate of the typical bridal store. (*Id*. at ¶ 50). Plaintiffs relied upon the representation of the sales closing ratio represented by Defendants in valuing the business and determining the purchase price. (*Id*. at ¶ 51). After purchasing the business, Plaintiff learned that Defendants significantly misrepresented the sales closing ratio. (*Id*. at ¶ 52). Defendants also failed to disclose to Plaintiff that the assets of Posh Bridal Tennessee and Posh Bridal Minnesota had been pledged as collateral and were encumbered by a lien. (*Id*. at ¶ 58).

Plaintiff made numerous requests to Defendants for the release of the lien, but Defendants failed and refused to do so until July 12, 2019, after Plaintiff retained legal counsel and made a formal demand. (*Id.* at ¶¶ 63-64). As a result, Plaintiff was unable to obtain financing to grow and market its newly acquired business. (*Id.* at ¶ 65).

On September 11, 2019, Plaintiff filed its Complaint against Defendants asserting four causes of action: Breach of Contract (Count I); Fraudulent Inducement to Contract/Promissory Fraud (Count II); Fraud and Intentional Misrepresentation (Count III); and Negligent Misrepresentation (Count IV). (Doc. No. 1). Plaintiff seeks damages amounting to no less than $350,000, payment of attorneys' fees and costs, an award of pre- and post-judgment interest, and any further relief as should be deemed appropriate. (*Id.* at 11-12).

## LEGAL STANDARD

### Rule 12(b)(6)

For purposes of a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must view all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief, even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Identifying and setting aside such allegations is crucial, because the allegations simply do not count toward the plaintiff's goal of showing plausibility of entitlement to relief. As suggested above, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) unless the motion is converted to one

for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

**Rule 9(b)**

In the federal system, fraud claims are subjected to a "heightened pleading standard." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 257 (6th Cir. 2012). The heightened standard requires plaintiffs to state "circumstances constituting fraud" with "particularity." Fed. R. Civ. P. 9(b). "Courts in the Sixth Circuit . . . requir[e] a plaintiff to, at a minimum, 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Moore v. It's All Good Auto Sales, Inc.*, 907 F. Supp. 2d 915, 922 (W.D. Tenn. 2012) (citation omitted); *see also Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (explaining that Rule 9(b) is satisfied so long as a plaintiff specifies "the who, what, when, where, and how' of the alleged fraud") (citation omitted).

## ANALYSIS

On October 28, 2019, Defendants filed the instant Motion, wherein they seek to dismiss each of Plaintiff's fraud-based claims (Counts II-IV). (Doc. No. 11). In support of the Motion, Defendants first argue that the fraud-based claims should be dismissed because Defendants did not owe a duty to disclose the alleged omissions to Plaintiff, which Defendants contend is required for fraud-based claims under Tennessee law. (Doc. No. 12 at 4-6). Defendants also argue that Plaintiff's claim of "Fraudulent Inducement to Contract/Promissory Fraud" (Count II) fails for the additional reason that Plaintiff failed to allege that Defendants entered the agreement to sell Posh

Bridal Tennessee without a present intent to perform. (*Id*. at 7). Additionally, Defendants argue that Plaintiff's claim of Negligent Misrepresentation (Count IV) fails as to Defendant Dean Suchy because he is not an employee of Posh Bridal, which Defendants contend is required to state a claim of negligent misrepresentation in Tennessee. (*Id*. at 7-8). Finally, Defendants ask the Court to "dismiss any request by [Plaintiff] for monetary relief that is contrary to the relief potentially recoupable under the . . . damage-limitation clause in the [APA]." (*Id*. at 9). Each of Defendants' arguments will be explored in turn.

### I. Tennessee Fraud Claims and Duty

Defendants argue that "[l]iability in fraud-based and negligent misrepresentation claims arises only in cases where the party being held responsible 'had a duty to disclose the facts at issue.'" (Doc. No. 12 at 5 (quoting *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship*, 387 S.W.3d 525, 547-50 (Tenn. Ct. App. 2012))). According to Defendants, such a duty "arises only in three distinct circumstances: (1) '[w]here there is a previous definite fiduciary relation between the parties,' (2) '[w]here it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other,' and (3) '[w]here the contract or transaction is intrinsically fiduciary and calls for perfect good faith.'" (*Id*. (quoting *Domestic Sewing Mac. Co. v. Jackson*, 83 Tenn. 418, 415 (Tenn. 1885))). Defendants contend

> [Plaintiff] makes no allegation in the lawsuit that any previous fiduciary duty existed between the parties. *See generally Compl.* Nor is the APA, on its face, "intrinsically fiduciary." *Id*. at Exh 1. In fact, [Plaintiff] affirmatively represents in the APA that it "has sought such accounting, legal, and tax advice . . . considered necessary to make an informed decision about entering into this Agreement." *Id*. at Exh. 1 at § 6(b). Nor is it alleged in the lawsuit that the parties were in a confidential relationship. What is alleged is that after "numerous discussions and negotiations between the parties," [Defendants] and [Plaintiff] entered into an arm's length commercial transaction. *Id*. at ¶ 21-25. Since none of the *Domestic Sewing* categories apply, no duty to disclose arose in this business transaction.

(*Id*. at 6). Accordingly, Defendants maintain that because they did not owe a duty to Plaintiff, the fraud-based claims fail as a matter of law. (*Id*.).

In response, Plaintiff argues that "[t]here is no rule under Tennessee law that requires a plaintiff to establish a legal duty to disclose in order to sufficiently allege misrepresentation claims." (Doc. No. 15 at 4). Plaintiff contends that Defendants' argument "conflate[s] the elements of a fraudulent concealment cause of action (which has not been asserted by [Plaintiff]) with the elements of causes of action for fraudulent inducement to contract, intentional misrepresentation and negligent misrepresentation (which have been pled in this case)." (*Id*. at 4-5). Thus, Plaintiff argues that its fraud-based claims should not be dismissed because the three claims asserted do not require Plaintiff to demonstrate that Defendants had a legal duty to disclose the facts at issue. (*Id*. at 6). Alternatively, Plaintiff argues "to the extent the Court determines that this is a case of misrepresentation by concealment, . . . Defendants were operating under a duty to disclose to [Plaintiff] the facts at issue." (*Id*. at 9-12).

In reply, Defendants concede that Plaintiff's asserted claims, as labeled by Plaintiff, do not require Plaintiff to demonstrate that Defendants owed a duty to Plaintiff. (Doc. No. 19 at 1). But Defendants assert that "[d]espite how Plaintiff labels its fraud-based claims in its lawsuit, the facts alleged in the lawsuit demonstrate that Plaintiff is, in fact, asserting a fraudulent concealment claim." (*Id*.). Thus, Defendants maintain that Plaintiff must demonstrate that a duty to disclose the facts at issue arose, and because it cannot do so, Plaintiff's fraud-based claims fail as a matter of law. (*Id*.).

When determining whether Plaintiff states a claim upon which relief can be granted, the Court will determine whether Plaintiff alleged facts that properly state the claims that Plaintiff *actually asserted* in its Complaint. Here, Plaintiff's asserted fraud-based claims (intentional

misrepresentation, fraudulent inducement, and negligent misrepresentation) all require a material *misrepresentation* (as opposed to a material *omission*). *See H & J Ditching & Excavating, Inc. v. Cornerstone Comm. Bank*, No. E2015-01060-COA-R3-CV, 2016 WL 675554, at *4 (Tenn. Ct. App. Feb. 19, 2016) (explaining that to properly state a claim of negligent misrepresentation, the plaintiff must plead, among other things, that the defendant supplied faulty information); *Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011) (explaining that to properly state a claim of fraudulent inducement, a plaintiff must plead, among other things, that the defendant made a false statement concerning a fact material to the transaction); *Davis v. McGuigan*, 325 S.W.3d 149, 154 (Tenn. 2010) (explaining that to properly state a claim of intentional misrepresentation a plaintiff must plead, among other things, that the defendant made a misrepresentation of an existing or past fact).

While a number of Plaintiff's allegations in its Complaint certainly surround Defendants' alleged omissions or failure to provide pertinent information, the allegations also indicate that Defendants made affirmative material misrepresentations of fact. *See Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590 (Tenn. Ct. App. 1980) ("Under Tennessee law, misrepresentations must be of an existing or past fact, not of an opinion or conjecture as to future events." (citing *Edwards v. Travelers Insurance of Hartford, Conn.*, 563 F.2d 105 (6th Cir. 1977))). For example, in its Complaint, Plaintiff alleges that in negotiations between the parties, "Defendants made [] representations to Plaintiff regarding the value, financial condition, and viability of Posh Bridal Tennessee" and the financial data provided to Defendants was "manipulated to misrepresent the actual financial condition of Posh Bridal Tennessee." (Doc. No. 1 at ¶¶ 20-21, 39, 40-41). Specifically, the Complaint alleges that Defendants fraudulently inflated Posh Bridal Tennessee's gross profits in the financial information that was given to Plaintiff by failing to deduct sales taxes in the financials. (*Id*. at ¶¶ 42-43). The Complaint also alleges that

Defendants represented to Plaintiff that Posh Bridal Tennessee's closing ratio was twice the close rate of the typical bridal store, which Plaintiff discovered was false after purchasing the business. (*Id.* at ¶¶ 50-52). Moreover, the Complaint alleges that in the APA, Defendants represented, among other things, that no documents given by Defendants to Plaintiff "contain[] any untrue statement of material fact." (*Id.* at ¶ 34). By including a reference to this representation, Plaintiff thereby implied that this representation was untrue.

Accordingly, Plaintiff has alleged, sufficiently for purposes of Rule 9(b) as well as Rule 12(b)(6),[2] that Defendant made material representations (rather than only omissions), which are required to state the fraud-based claims that Plaintiff asserted in this lawsuit. This Court declines Defendants' invitation to construe Plaintiff's three fraud-based claims as a single claim (for fraudulent concealment) that Plaintiff has not asserted in this lawsuit, and then dismiss that claim for failure to state a claim; such declination is especially appropriate under the circumstances present here, where Plaintiff did properly allege the claims it actually asserted. If Plaintiff wishes to bring a fraudulent concealment claim based on Defendants' alleged omissions, it may attempt to do so by filing a motion for leave to amend its complaint; for now, however, no such claim is properly before the Court.

Therefore, because the fraud-based claims Plaintiff asserted do not require Plaintiff to demonstrate that Defendants owed a duty under Tennessee law, *see Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566-67, 571-72 (6th Cir. 2009), the Court rejects Defendants' argument that Plaintiff is required to demonstrate a duty for its fraud-based claims to survive.[3]

---

[2] Defendants do not attack Plaintiff's fraud-based claims on the grounds that they are not alleged with sufficient particularity to satisfy Fed. R. Civ. P. 9(b).

[3] Accordingly, the Court will not delve into Plaintiff's alternative argument that Defendants did in fact have such a duty under Tennessee law.

## II. Fraudulent Inducement to Contract/Promissory Fraud

Next, Defendants assert that Plaintiff's "attempt to assert a fraudulent inducement to contract/promissory fraud claim, based on the facts alleged, is akin to fitting a square peg in a round hole." (Doc. No. 12 at 7). Defendants argue that "a plaintiff asserting promissory fraud must allege that the defendant had no intent to perform on a promise of future action" and here, Plaintiff "fails to allege that [Defendants] had no present intent to perform on the sale transaction" and cannot because "the sale transaction was, indeed, performed." (*Id.* (citing *Kelly v. Int'l Cap. Res., Inc.*, 231 F.R.D. 502, 518 (M.D. Tenn. 2005))).

In response, Plaintiff argues that "[u]nder Tennessee law, 'claims for fraudulent inducement to enter into a contract may involve false statements of past or present facts *or* false promises made without the present intent to perform." (Doc. No. 15 at 13 (quoting *Lowe v. Gulf Coast Development, Inc.*, No. 01–A–019010CH00374, 1991 WL 220576, *7 (Tenn. Ct. App. Nov. 1, 1991)). Plaintiff contends that its fraudulent inducement to contract claim "does not rest on false promises made without the present intent to perform (*i.e.*, promissory fraud). Rather, [Plaintiff's] inducement claim rests on Defendants' multiple false statements concerning the value and financial condition of the Posh Bridal Tennessee business[.]" (*Id.*).

To state a fraudulent inducement claim, the plaintiff must plead that the defendant (1) made a false statement concerning a fact material to the transaction (2) with knowledge of the statement's falsity or utter disregard for its truth (3) with the intent of inducing reliance on the statement, (4) the statement was reasonably relied upon, and (5) an injury resulted from this reliance. *Baugh*, 340 S.W.3d at 388; *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630–31 (Tenn. Ct. App. 2000). "Claims for fraudulent inducement *may* involve false statements of past or present facts *or* false promises made without the present intent to perform." *Shelbyville Hosp. Corp. v. Mosley*, 69 F. Supp. 3d

718, 728 (E.D. Tenn. 2014) (citing *Lowe*, 1991 WL 220576, at *7) (emphasis added); *see also Kelly*, 231 F.R.D. at 517-18.

Because Tennessee courts have held that a fraudulent inducement claim may be based on false statements of past or present facts *or* false promises made without the present intent to perform, *Lowe*, 1991 WL 220576, at *7, the Court must reject Defendants' argument that Plaintiff fails to state a fraudulent inducement claim because Plaintiff "fails to allege that [Defendants] had no present intent to perform on the sale transaction." (Doc. No. 12 at 7). And as the Court noted above when discussing Plaintiffs' fraudulent misrepresentation claim, Plaintiff has alleged that Defendants made affirmative misrepresentations on which its fraudulent inducement claim may be based.

Notably, the Court can hardly fault Defendant for making the argument it makes here; Plaintiff confusingly labels its claim as one for "fraudulent inducement to contract/promissory fraud," which would lead a reasonable observer to believe that Plaintiff is in fact asserting a claim of promissory fraud, which *does* require a promise of future action with no present intent to perform.[4] But Plaintiff now disclaims that it is asserting such a claim, leaving in place in Count III its claim for fraudulent inducement, which as discussed above requires no such promise. (Doc. No. 15 at 13).

The Court is cognizant that "[i]n evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the [C]ourt must construe the complaint in a light most favorable to [Plaintiff] and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations."

---

[4] *See Houghland v. Houghland*, No. M2005–01770–COA–R3–CV, 2006 WL 2080078, at *3 (Tenn. Ct. App. July 26, 2006) (outlining the elements of promissory fraud as: "(1) an intentional misrepresentation of a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) an injury caused by reasonable reliance on the statement; and (4) a promise of future action with no present intent to perform."); *see also Shahrdar v. Global Hous., Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998) (claim based on promissory fraud must "embody a promise of future action without the present intent to carry out the promise.").

*Sykes v. Dudas*, 573 F. Supp. 2d 191, 198 (D.D.C. 2008) (citation omitted). Accordingly, construing the Complaint in favor of Plaintiff, as the non-moving party, the Court finds that Plaintiff has properly stated a fraudulent inducement claim (despite its confusing label of Count III) based on its allegations involving Defendant's false statements of past or present fact. To be clear, to the extent Plaintiff does assert a claim of promissory fraud, or a claim of fraudulent inducement based on future promises, that claim fails, as even Plaintiff concedes that it has not alleged that Defendants promised future action without an intent to perform. But the Court will not "dismiss" any such claim, because the Court does not perceive that any such claim has actually been made such that it even could be dismissed.

### III. Negligent Misrepresentation

To properly state a claim of negligent misrepresentation in Tennessee, a plaintiff must allege that: (1) the defendant was acting in the course of its business or profession or in a transaction in which it had a pecuniary interest; (2) the defendant supplied faulty information meant to guide others in their business transaction; (3) the defendant failed to exercise reasonable case in obtaining or communicating the information; and (4) the plaintiff justifiably relied upon the information. *H & J Ditching & Excavating, Inc.*, 2016 WL 675554, at *4. Defendants argue that Plaintiff did not properly state a negligent misrepresentation claim against Defendant Dean Suchy, because it did not allege that he was acting in the course of his business or profession when any false representations were made. (Doc. No. 12 at 8). In support, Defendants attach Posh Bridal's corporate filings obtained from the Minnesota Secretary of State that Defendants contend "do not list Mr. Suchy as holding any corporate role or title with [Posh Bridal]." (*Id.*).

In response, Plaintiff argues that it did allege Dean Suchy was acting in the course of his business or profession when it alleged that Mr. Suchy "operated and managed" both Posh Bridal

stores (Doc. No. 1 at ¶ 11), "assisted with the financial affairs of the business" (*id*. at ¶ 12), and prepared the business's financial records that are at issue in this case. (*id*. at ¶ 14). Plaintiff cites *Caboodles Cosmetics, Ltd. Partnership v. Caboodles, LLC*, 412 F. Supp. 2d 872 (W.D. Tenn. 2006) in support of the notion that such allegations are sufficient. In *Caboodles*, the plaintiff-buyer purchased a business and thereafter discovered discrepancies in the defendant-seller's financial records that were provided to the plaintiff prior to the closing. 412 F. Supp. 2d at 874-75. The purchaser also asserted claims against the manager of the business in his personal capacity. *Id*. The manager filed a motion to dismiss, among other things, the purchaser's claim of negligent misrepresentation asserted against him. *Id*. at 877. The district court denied the manager's motion to dismiss the negligent misrepresentation claim and explained that the Complaint alleged that the manager "acted in the course of his employment as manager for [the defendant-seller]." *Id*.

In Reply, Defendants do not address Plaintiff's argument, but again assert that Plaintiff's negligent misrepresentation claim against Defendant Dean Suchy fails because "it is undisputed that [Posh Bridal] was operated and managed, at Plaintiff's own admission, solely by Ms. Suchy" and "Mr. Suchy holds no corporate role or title with the company that sold its assets to the Plaintiff." (Doc. No. 19 at 6).

Here, the Complaint specifically states that "Defendants Marie Suchy and *Dean Suchy operated and managed* the Posh Bridal Tennessee and Posh Bridal Minnesota stores." (Doc. No. 1 at ¶ 11 (emphasis added)). Although Defendants claim it is "undisputed" that the business was managed and operated "solely by Ms. Suchy," at the motion to dismiss stage (as opposed to the summary judgment stage where the Court may look to disputed and undisputed facts) the Court must construe all non-conclusory factual allegations in the Complaint as true. *See Iqbal*, 556 U.S. at 678. In addition to the allegation that Defendant Dean Suchy "operated and managed" the Posh

Bridal Tennessee store, the Complaint further alleges that Defendant "Dean Suchy assisted with the financial affairs of both the Posh Bridal [stores]" prior to the sale of the Posh Bridal Tennessee and he prepared Posh Bridal's financial records (which Plaintiff alleges contained material misrepresentations as to Posh Bridal Tennessee's gross profits). (Doc. No. 1 at ¶¶ 12, 14). Accordingly, taking these allegations—which are not merely conclusory, in the Court's view—as true, the Court finds that the Complaint alleges that Defendant Dean Suchy was acting within the scope of his business or profession when he allegedly "made material misrepresentations in the financials and documents to fraudulently inflate the value of and increase the purchase price of Posh Bridal Tennessee." (*Id*. at ¶ 41).

Defendants' reliance on Plaintiff's corporate filings does not change the outcome. (*See* Doc. No. 12-1). Presumably, Defendants are asserting that one must hold a corporate title in order to be considered acting in the "course of his business, profession, or employment" under Tennessee law. (Doc. No. 12 at 8). But Defendants do not cite—and the Court, on its end, cannot find—any authority standing for the proposition that an individual must have an ownership interest in the business, or hold a corporate title, in order to be considered acting in the course of his business, profession, or employment for purposes of a negligent misrepresentation claim under Tennessee law. Accordingly, the Court finds that Plaintiff pled, sufficiently under Rule 9(b), that Defendant Dean Suchy was acting in the course of his employment when it alleged that he "operated and managed" Posh Bridal Tennessee; therefore, Plaintiff's negligent misrepresentation claim against Defendant Dean Suchy survives Defendants' Motion.

### IV. Damages

Finally, Defendants assert that "[t]o the extent this Court dismisses [Plaintiff's] fraud-based claims, [Plaintiff's] sole remedy for the damages it alleges in the lawsuit is set forth in the APA."

(Doc. No. 12 at 9). Thus, Defendants ask the Court to "dismiss any request by [Plaintiff] for monetary relief that is contrary to the relief potentially recoupable under the . . . damage-limitation clause in the [APA]." (*Id*. at 10). The Court declines to do so, because, among other reasons, the Court determined above that Plaintiff's fraud-based claims will survive Defendants' Motion.

## CONCLUSION

For the above-mentioned reasons, Defendant's Motion to Dismiss (Doc. No. 11) will be **DENIED**.

An appropriate order will be entered.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE